# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00726-CV

**Karrie Key, Appellant**

**v.**

**Tiffany Condominium Owners Association, Inc., Appellee**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-25-004160, THE HONORABLE SHERINE THOMAS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Karrie Key contends that the trial court erred in denying her motion to dismiss filed under the Texas Citizens Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code § 27.005. We affirm the trial court's order denying Key's motion.

## BACKGROUND

On June 10, 2025, Tiffany Condominium Owners Association, Inc. filed suit against Key and four other condo owners seeking temporary and permanent injunctive relief requiring the defendants to temporarily vacate their condos so that necessary repairs could be made to the common areas' sewer system.[1] The Association alleged that in September 2024, it discovered there was a "sudden issue" of hazardous waste leaking from the sewer system into

---

[1] The other named defendants were James Patrick LaWare, Steven Sheehan, Linda Sheehan, and Russell Shores. The case was styled in the trial court as "Tiffany Condominium Owners Association, Inc., Plaintiff vs. Karrie Key, et al., Defendants."

several units and that after obtaining an expert report recommending a "full sewage system replacement" for the entire property, the Association had determined that the entire eighty-eight unit property would need to be vacated for about ninety days to allow for the "extensive excavation" project. The Association provided notice to all condo owners on May 1, 2025, requiring them to "temporarily leave" the property "as of July 1, 2025." However, the five defendants had "made it known that they refuse to leave their respective units, causing significant delay in starting" the sewer-repair project, and all the other unit owners had complied with the notice to vacate.

The Association alleged that without replacing the entire sewage system, the property "is subject to health and safety hazards to an extreme degree and could be faced with condemnation to the City of Austin." Thus, the Association's pleadings continued, "the Defendants' failure to temporarily leave the Property threatens the complete contamination of the entire building, leaving other owners' condominium units *destroyed or subject to total condemnation*." The Association alleged that the applicable deed restrictions and bylaws required the defendants to adhere to its notice to vacate, afforded the Association with an access easement to all the units, and required the Association to make the repairs. In addition to injunctive relief, the Association sought statutory damages, *see* Tex. Prop. Code § 202.004, and attorney's fees, *see id.* § 5.004, for the defendants' violations of the deed restrictions should they fail to timely vacate.

In the evening of July 1, 2025, the Association filed an amended petition (its live petition) adding claims for (a) breach of the deed restrictions and condo bylaws and (b) tortious interference with an existing contract that the Association has with Allstate Plumbing to complete the sewer repairs. The Association attached to its live petition a copy of the

2

Declaration and Master Deed for Tiffany Condominiums (the Declaration) and the Amended and Restated Bylaws of Tiffany Owners Association, Inc. (the Bylaws). The style of the lawsuit remained the same, but in the opening paragraph of its live petition, the Association stated that it was

> seeking a court order restraining Defendant James Patrick LaWare, Defendant Russell Shores, Defendant Linda Holub, Defendant Lilia Christine Srubar, Defendant Ryan Srubar, Defendant Bokay John Separate, Defendant Christian Broome, Defendant Candyce Griswold, and Defendant Savannah Cummings (collectively "Defendants"), from continuing to interfere with the Association's mitigation and repair of health and safety hazards on its property.

Notably, Key was omitted from this opening paragraph as a defendant—as were Steven and Linda Sheehan—and several new persons appeared as defendants. In the very next section of the amended petition, however, titled "Parties," Key and Steven Sheehan are identified as defendants, along with the other new persons, but Linda Sheehan is not identified at all.

Early the next afternoon, on July 2, 2025, Key filed the subject TCPA motion to dismiss, arguing that the Association's lawsuit is based on or in response to her exercise of the rights of free speech, of association, and to petition and that the Association could not establish a prima facie case for its claims against her. Three hours later, the Association filed a notice of nonsuit as to Key. On July 3, 2025, the trial court conducted a hearing on the Association's petition for temporary injunction and that same day granted a temporary injunction against defendants LaWare, Shores, Holub, the Srubars, Separate, Broome, Griswold, and Cummings. The order required the defendants and any persons living in their units to vacate the units by 5 p.m. on July 7 and enjoined them from interfering with the excavation and repair project or with the Allstate Plumbing contract.

Despite the Association's nonsuiting her, Key filed the following motions and pleadings on July 11, 2025: (1) a motion to show authority, challenging the authority of the attorney representing the Association in this lawsuit; (2) an original third-party petition, alleging causes of action against several Association board members and against RowCal Construction Company (alleged to be the parent company of Allstate Plumbing); and (3) and a motion to dissolve the temporary injunction. On August 12, 2025, Key filed a first amended TCPA motion to dismiss, which the trial court heard that same day. On September 12, 2025, the trial court denied Key's TCPA motion and sustained several of the Association's objections to Key's evidence. Key perfected this interlocutory appeal.

## DISCUSSION

We review de novo a trial court's ruling on a TCPA motion to dismiss, including whether each party has carried its respective burden under the TCPA. *See Long Canyon Phase II & III Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 217 (Tex. App.—Austin 2017, no pet.). To determine whether the dismissal of a legal action is warranted, we "consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We review the pleadings and evidence in the light most favorable to the nonmovant. *Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 801 (Tex. App.—Austin 2017), *aff'd*, 611 S.W.3d 1 (Tex. 2020). Whether the TCPA applies is an issue of

4

statutory construction that we also review de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

Our review of a trial court's ruling on a TCPA motion to dismiss requires a three-step analysis. *Youngkin*, 546 S.W.3d at 679 (describing three-step analysis under prior version of TCPA). As a threshold matter, the movant must demonstrate that the TCPA properly applies to the legal action against it. Tex. Civ. Prac. & Rem. Code § 27.005(b) (requiring movant to demonstrate that legal action "is based on or is in response to" its exercise of protected rights); *see also id.* § 27.001(6) (defining "legal action" to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief"). If the movant meets that burden, the nonmovant must establish by clear and specific evidence a prima facie case for each essential element of its claim. Tex. Civ. Prac. & Rem. Code § 27.005(c). If the nonmovant satisfies that requirement, the burden shifts back to the movant to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Key thus bore the initial burden of demonstrating that the TCPA applies to the Association's legal action—that is, that the Association's lawsuit and claims for deed violations and tortious interference are "based on" or "in response to" Key's exercise of (a) the right of free speech, (b) the right to petition, or (c) the right of association. Tex. Civ. Prac. & Rem. Code § 27.005(b)(1); *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). Key argued in her TCPA motion that her refusing to vacate her condo and her voicing of such refusal constitute one or more of these three protected rights.

The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern," with a "matter of public concern" being a

5

statement or activity regarding (a) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (b) a matter of political, social, or other interest to the community; or (c) a subject of concern to the public. Tex. Civ. Prac. & Rem. Code § 27.001(3), (7). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). The "exercise of the right to petition" means, relevant here, a "communication" (a) in or pertaining to a judicial proceeding or (b) that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state. *Id.* § 27.001(4). And the "exercise of the right of association" means "to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2).

### *The Association's Initial Filing of its Lawsuit and Claim for Deed Violations*

Because a TCPA "legal action" includes both a lawsuit as a whole and individual causes of action, *see id.* § 27.001(6), we consider the Association's initial filing of its lawsuit (with its claim for injunctive relief based on anticipated deed violations) separately from its later-added claim for tortious interference. *See Cobb Dev. v. McCabe*, No. 03-21-00524-CV, 2023 WL 4003513, at *5 (Tex. App.—Austin June 15, 2023, pet. denied) (mem. op.) (noting that courts determine dismissal under TCPA on claim-by-claim basis). Through its original petition, the Association sought a temporary and permanent injunction based on the defendants' alleged, anticipated violation of the Declaration and Bylaws by informing the Association of their refusal to vacate their respective condos as required by the July 1 deadline. Key contends that the Association filed its lawsuit based on or in response to her exercise of the right of free speech

6

and to petition, as evidenced by the following communications alleged in the Association's original petition:

- Defendants have notified the Association that they will not leave the Property even temporarily for anything short of an Order from this Court.

- Key informed Community Manager, Mystre' Van Horn, that she refuses to leave her condo.

In sum, the statements at issue are Key's telling the Association that she does not intend to vacate her condo unless required to do so by court order. These statements cannot be fairly considered as constituting the right of free speech or to petition.[2]

To qualify as TCPA communications—and thus to constitute the exercise of the right of free speech or to petition—these above alleged statements had to either (a) regard a matter of interest to the community or a subject of concern to the public or (b) pertain to a judicial proceeding. *See id.* § 27.001(1), (3), (4), (7). To constitute her exercise of the right of free speech, Key's statements had to "regard" a matter of public concern. *See id.* § 27.001(3), (7). "To be a matter of public concern, a claim must have public relevance beyond the interests of the parties." *Szymonek v. Guzman*, 641 S.W.3d 553, 565 (Tex. App.—Austin 2022, pet. denied) (quoting *Creative Oil & Gas v. Lona Hills Ranch*, 591 S.W.3d 127, 136 (Tex. 2019)). Moreover, "a communication cannot be made in connection with a matter of public concern

---

[2] Key also argues in her brief that these communications constitute the right of association, but the right of association is not defined as involving communications, unlike the rights of free speech and to petition. *Compare* Tex. Civ. Prac. & Rem. Code § 27.001(3), (4), *with id.* § 27.001(2). Rather, the right of association is defined as the "join[ing] together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id.* § 27.001(2). Key does not make any substantive argument in her brief about how the Association's lawsuit was based on or in response to Key's "joining together [with other persons] to collectively" express or pursue common interests; rather, her briefing addresses only her alleged "communications" made to the Association. We therefore do not address Key's assertion that the Association's lawsuit was based on or in response to her exercise of the right of association.

unless it had relevance to a public audience at the time it was made, regardless of the happenstance of after-the-fact ramifications." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 917 (Tex. 2023).

Key argues that her statements to the Association that she will not vacate her condo absent a court order "regard" a matter of community interest or public concern because the Association alleged in its original petition that if the entire sewage system is not replaced—which cannot happen unless the defendants vacate—the entire property will be subject to "health and safety hazards to an extreme degree." While public health and safety can generally be matters of public interest, Key's statements at issue—that she will not vacate her condo—do not themselves "regard" or "concern" the issue of the risk to public health and safety caused by improperly managed sewage. Key's statements, while possibly "related somehow" to a public or community interest, have no relevance themselves to a public audience. *See id.* at 916.

When the communication involved does not itself relate to a matter of public concern, the assertion that it could result in one is beyond the reach of the TCPA. *Hayman v. Khan*, 693 S.W.3d 444, 450 (Tex. App.—Houston [14th Dist.] 2023, no pet.). Key's statements, made to the Association's board members, were not likely to impact a larger part of the community or to have broader relevance to a public audience outside the Association. *See id.* at 451; *see also McLane Champions, LLC*, 671 S.W.3d at 916-18 (holding that TCPA did not apply to alleged misrepresentations made in connection with purchase of professional sports team even though sports team itself is of general public interest); *Beard v. McGregor Bancshares, Inc.*, No. 05-21-00478-CV, 2022 WL 1076176, at *6 (Tex. App.—Dallas Apr. 11, 2022, no pet.) (mem. op.) (holding that TCPA did not apply when comments were personal attacks stemming from private dispute and speech had no connection to broader community);

8

*Yu v. Koo*, 633 S.W.3d 712, 723 (Tex. App.—El Paso 2021, no pet.) (holding that statements about circumstances of allegedly wrongful termination by private employer were not matters of public concern); *Vaughn-Riley v. Patterson*, No. 05-20-00236-CV, 2020 WL 7053651, at *3 (Tex. App.—Dallas Dec. 2, 2020, no pet.) (mem. op.) (holding that TCPA did not apply when there was no evidence that subject of communication was "of general interest and of value and concern to the public"); *Morris v. Daniel*, 615 S.W.3d 571, 578 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (holding that TCPA did not apply because "the safety and education of a single child is not a public concern unless it has some relevance to a broader public audience").

Communications are a matter of public concern when they can "be fairly considered as relating to any matter of political, social or other concern to the community" or when it "is a subject of general interest and of value and concern to the public." *Hayman*, 693 S.W.3d at 450 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). Key's statements to the Association's board members were private communications about her intention to remain in her condo; they did not in themselves have relevance beyond the private or personal interests of the parties or to the issue of public health and safety due to the risk of improperly managed sewage. The Association's initial lawsuit and the claim therein did not implicate Key's exercise of the right of free speech.

As to the right to petition, Key references an email she sent to Association board members on the morning the Association filed its lawsuit. In the email, she wrote that "[m]any [condo] owners sent emails to RowCal et al, letting them know they would vacate their condos if so enjoined by court order." Key argues that this email statement constitutes a "pre-suit demand letter," which this Court has held can fall under the right to petition. *See Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 220–21 (Tex. App.—Austin 2017, no

9

pet.) (determining that letter HOA sent to homeowners threatening to file suit for alleged damage to drainage easement was pre-suit demand letter that fell under catch-all provision of TCPA Section 27.001(4)(E)); *see also* Tex. Civ. Prac. & Rem. Code § 27.001(4)(E) (including in definition of right to petition "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state").

The trial court sustained the Association's evidentiary objection to this email, a ruling Key challenges on appeal; however, even were we to consider the email in our review, we would conclude that it does not constitute a pre-suit demand letter constituting Key's exercise of the right to petition. While the email references the possibility of the *Association's* obtaining legal relief through *its* petition to the court for an order enjoining Key and the other defendants' conduct, it cannot be reasonably construed as a pre-suit demand made *by Key* or the other defendants. We hold that Key did not meet her burden to demonstrate that the TCPA applies to the Association's initial filing of its lawsuit and the claim therein for Key's alleged, threatened violations of applicable deed restrictions.

### The Association's Claim for Tortious Interference

The Association amended its pleading to add its claim for tortious interference with the Allstate Plumbing contract on July 1, 2025, the deadline by which all owners were required to vacate their condos. Based on the inconsistencies in its pleading outlined above in the background section, it appears that the Association intended to omit Key as a defendant, as Key had already vacated and even sold her condo by that date, according to Key's own

10

admissions.[3]  Indeed, less than twenty-four hours later, the Association non-suited Key, albeit a few hours after Key filed her TCPA motion.  We recognize that a TCPA motion to dismiss constitutes a claim for affirmative relief that survives a nonsuit by the other party.  *See Human Power of N Co. v. Turturro*, No. 03-24-00305-CV, 2024 WL 4643931, at *3 (Tex. App.—Austin Nov. 1, 2024, no pet.) (mem. op.).  Therefore, although the Association's nonsuit did not moot Key's TCPA motion, we must consider what effect Key's vacating the premises before the Association filed its amended petition has on the applicability of the TCPA to the Association's tortious-interference claim.

For the TCPA to apply to the tortious-interference claim, Key must demonstrate that the claim is "based on or in response to" her protected communications.[4]  *See* Tex. Civ. Prac. & Rem. Code § 27.005.  To meet that burden, Key cites an allegation in the Association's amended petition that Key and the other defendants "have *openly expressed* their intentional and willful interference with the Allstate Plumbing Contract *by refusing to temporarily leave*" the property.  (Emphases added.)  As with the Association's violation-of-deed-restrictions claim, Key seems to be contending that her informing the Association that she will not vacate her condo constitutes a TCPA "communication."  For the same reasons already discussed, we conclude that such communication does not involve a matter of public concern.

---

[3]  Key judicially admits in her appellate briefing that she had vacated and sold her condo before the July 1 deadline and had made the Association aware of such fact at the time.  *See Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (observing that parties may judicially admit facts in their appellate briefing).

[4]  As we concluded with respect to Key's argument that the Association's initial filing of the lawsuit and the claim therein for violation of deed restrictions implicated her right of association, we likewise conclude with respect to the tortious-interference claim that Key makes no cognizable argument that such claim is based on or in response to her right of association.  Her briefing cites only the purported "communications" she made and does not cite any alleged "joining together" of the defendants to pursue or defend common interests.

11

Furthermore, we cannot reasonably conclude that the alleged statements are a factual predicate, main ingredient, or fundamental part of the tortious-interference claim. *See Hanna v. Williams*, 681 S.W.3d 416, 424 (Tex. App.—Austin 2023, pet. denied); *see also Herczeg v. 5005 SSR, LLC*, No. 03-19-00760-CV, 2021 WL 3868749, at *3 (Tex. App.—Austin Aug. 31, 2021, pet. denied) (mem. op.) (acknowledging that in determining whether TCPA movant met its initial burden, "the movant's activities that are not a factual predicate for the nonmovant's claims are simply not pertinent to the inquiry") (cleaned up). It is not Key's *verbalizing* that she refuses to leave her condo that is actionable as an interference with the Allstate Plumbing contract; it is her actual *failing to leave* that is the actionable conduct or the main ingredient and, thus, the impetus of the Association's claim. *See Hanna*, 681 S.W.3d at 425 (acknowledging that at core of every lawsuit is conduct that is "bracketed by communications," but "there is a distinction between communications used as evidence to support a claim and claims that are based on or in response to those communications").

Key's communicating that she does not intend to move out of her condo by July 1 cannot reasonably be said to be the basis or impetus for the Association's tortious-interference claim. Rather, it is her staying in her condo—*after* the July 1 vacation deadline—that would constitute interference. *Cf. Dallas Symphony Ass'n v. Reyes*, 571 S.W.3d 753, 761 n.38 (Tex. 2019) (listing elements of claim for tortious interference with existing contract, including element, relevant here, of "a willful and intentional act of interference with the contract"). But it is undisputed that Key had vacated and in fact sold her condo before that date. We cannot conclude that the Association's tortious-interference claim is factually predicated on an act of interference that never occurred. We hold that the Association's tortious-interference claim is not based on or in response to Key's exercise of her TCPA-protected rights.

12

*Evidentiary rulings*

In her second issue, Key argues that the trial court abused its discretion in sustaining several of the Association's objections to the evidence she attached to her TCPA motion. We need not address this issue because, even were we to consider the excluded evidence, we would still conclude that the trial court did not err in determining that the TCPA does not apply to the Association's claims. Furthermore, although Key argues extensively about how the excluded evidence supports her counterclaims that the Association's board members conspired to execute a self-dealing contract to complete the plumbing repairs—issues that are not before us in this interlocutory appeal—she does not explain how the excluded evidence supports her burden of establishing that the TCPA applies. We therefore overrule her second issue.

## CONCLUSION

We affirm the trial court's denial of Key's TCPA motion to dismiss.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed

Filed:  May 13, 2026

13