ACCEPTED
03-17-00552-CV
21280519
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/13/2017 6:24 PM
JEFFREY D. KYLE
CLERK

NO. 03-17-00552-CV

---

**In the Third Court of Appeals,
Austin Texas**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

12/13/2017 6:24:50 PM

JEFFREY D. KYLE
Clerk

---

DENTISTRY OF BROWNSVILLE, PC, KS2 TX, PC, SUMMIT DENTAL CENTER, LP
AND HARLINGEN FAMILY DENTISTRY
*Appellants,*

V.

TEXAS HEALTH AND HUMAN SERVICES COMMISSION, CHARLES SMITH,
EXECUTIVE DIRECTOR, AND ANNICK BARTON
*Appellees.*

---

On appeal from the 250th Judicial District Court, Travis County,
Texas, Trial Court No. D-1-GN-16-005358
The Honorable Karin Crump, Presiding

---

## APPELLANTS' BRIEF

---

**RIGGS & RAY, P.C.**
Jason Ray
Bar No. 24000511
506 West 14th Street, Suite A
Austin, TX 78701
Tel: 512 457-9806
Fax: 512 457-9066
jray@r-alaw.com
COUNSEL FOR APPELLANTS

*Oral Argument Not Requested*

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellants:** | Dentistry of Brownsville, PC<br>KS2 TX, PC<br>Summit Dental Center, LP<br>Harlingen Family Dentistry |
| **Counsel for Appellants:** | Jason Ray<br>State Bar No. 24000511<br>RIGGS & RAY, P.C.<br>506 West 14th Street, Suite A<br>Austin, Texas 78701<br>Tel: (512) 457-9806<br>Fax: (512) 457-9066<br>*jray@r-alaw.com* |
| **Appellees:** | Texas Health and Human Services Commission<br>Charles Smith, Executive Director<br>Annick Barton<br>Gina Marie Muniz |
| **Counsel for State:** | Kara Holsinger<br>Assistant Attorney General<br>State Bar No. 24065444<br>Office of the Attorney General of Texas<br>Administrative Law Division<br>P.O. Box 12548, Capitol Station<br>Austin, TX 78711-2548<br>Tel: (512) 475-4203<br>Fax: (512) 320-0167<br>Kara.holsinger@oag.texas.gov |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................... i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES .................................................................... v

STATEMENT OF THE CASE ................................................................ vii

RECORD REFRENCES ........................................................................ viii

ISSUE PRESENTED .......................................................................... ix

STATEMENT OF FACTS ...................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................... 7

ARGUMENT ..................................................................................... 9

   I.  The trial court misapplied the standard of review for Pleas to the Jurisdiction ............................................................................... 9

   II.  The trial Court had jurisdiction to hear the Providers' rule challenge ........................................................................... 10

       1) Rules 356.202 and 354.1450 do not provide process "consistent with the State's Administrative Procedure laws" and "any additional appeal rights that would otherwise be available under procedures established by the State," thus violating federal regulations at 42 C.F.R. §495.370. (CR 209, 212) ...................................................... 13

       2) The rules were promulgated pursuant to a statute—Human Resources Code section 32.070—that does not, and cannot, apply to the EHR grant program. (CR 211-212). ......................................... 14

       3) The rules impose a restriction on appeals (that is, no appeal to the State Office of Administrative Hearings and no judicial review) that is not expressly or impliedly found in Human Resources Code section 32.070, and therefore the rules imposed new limitations

Appellants' Brief

inconsistent with the statute, in the event that section does apply to EHR grants. (CR 213)..................................................................15

4) The rules were promulgated in excess of the agency's authority. (CR 213).............................................................................15

5) The rules do not provide minimal and adequate due process protections. (CR 214). ....................................................................16

6) The rules circumvent the due process protections in the Administrative Procedure Act, which would normally apply to this contested matter. (CR 211). ...........................................................16

7) The rules do not permit the agency to institute a vendor hold to recoup EHR funds, unless the Providers get a contested case hearing. (CR 214). ........................................................................17

III.  The trial Court had jurisdiction to hear the Providers' *ultra vires* claims.................................................................................17

1) Human Resources Code sections 32.0281(e) and/or 32.034, and/or Government Code section 2105.302, and/or overriding federal regulations at  42 C.F.R. §495.370 apply to the EHR grant program, and all require a contested case hearing.  CR 201, 210.  18

2) The HHSC letters signed by HHSC staff were not final agency decisions, so taking agency action based on a staffer's letter is an *ultra vires* act. CR 208, 255, 258-261.............19

3) The "action memo" was a statement by the HHSC Commissioner that set out the ministerial procedure for EHR disputes. HHSC did not follow those procedures when it adjudicated Kool Smiles' and Summit's EHR dispute. That was *ultra vires*. CR 215, 261-262. ..20

4) It was an *ultra vires* act for the HHSC staff to not inform auditors and Ad Hoc members that the Providers had been passed a pre-payment audit.  CR 216, 263-264................................................21

5) It was an *ultra vires* act for the HHSC to present a qualification standard to the auditors and Ad Hoc Panel members that was

different than what its agent TMHP had required years earlier.  CR 216, 263-264................................................................................21

6) HHSC staff's "star chamber" review process was an *ultra vires* violation of the Providers' due process rights.  CR 216. ................ 22

7) It was *ultra vires* for HHSC and its employees to apply the audit procedure set out in Human Resources Code section 32.070 (and the concomitant rules 356.202 and 356.1450 adopted under that statute) to the EHR program. CR 212................................. 22

IV.   The trial court committed reversible error in granting HHSC's Motion for Summary Judgment, which contained no reference to any evidence. ...................................................................................... 23

V.  The trial court's Final Judgment contains error............................ 25

PRAYER ........................................................................................... 26

RULE 9.4(i) COMPLIANCE.............................................................28

CERTIFICATE OF SERVICE.........................................................28

APPENDIX ......................................................................................29

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

*6th & Neches, L.L.C. v. Aldridge*, 992 S.W.2d 684
(Tex. App.—Austin 1999, pet. denied) ...............................................19

*Black v. Jackson*, 82 S.W.3d 44 (Tex. App.—Tyler 2004, no pet.) ........... 25

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex. 2000) ...................... 9

*Boeker v. Syptak,* 916 S.W.2d 59
(Tex.App.—Houston[1st Dist.] 1996, no writ) ................................... 25

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) ................9, 18, 26

*Combs v. Entertainment Publications, Inc.*, 292 S.W.3d 712
(Tex.App.—Austin 2009) ...........................................................12, 26

*E.B. Smith Co. v. U.S. Fid. & Guar. Co.*, 850 S.W.2d 621 .......................... 25

*Gonzales v. Shing Wai Brass and Metal Wares Factory, Ltd.,* 190 S.W.3d
742 (Tex.App.—San Antonio 2005, no pet.) ..................................... 25

*Harris County v. Sykes*, 136 S.W.3d 635 (Tex. 2004). ............................. 26

*Houston Belt & Terminal Railway Co. v. City of Houston*,
487 S.W.3d 154 (Tex. 2016) ............................................................ 18

*Jansen v. Fitzpatrick*, 14 S.W.3d 426
(Tex. App.—Houston[14th Dist.], no pet.) ....................................... 25

*Rogers v. Ricane Enterprises*, 772 S.W.2d 76 (Tex. 1989) ........................ 25

*Rogers v. Texas Optometry Bd.*, 609 S.W.2d 248
(Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) ................................ 22

*Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217
(Tex. 2004) ................................................................................ 9, 10

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Texas Dept. of Prot. & Reg. Ser. v. Mega Child Care, Inc.,*
    145 S.W.3d 170 (Tex. 2004) ...........................................................16

*University of Tex. v. Poindexter*, 306 S.W.3d 798
    (Tex. App.–Austin 2009, no pet.) ................................................ 9, 10


**STATUTES**                                                                 **PAGE(S)**

1 TEX. ADMIN CODE § 356.202................................................................13, 22
1 TEX. ADMIN CODE § 354.1450 ...........................................................13, 22
1 TEX. ADMIN CODE 354.1450(c)(1) ........................................................14
1 TEX. ADMIN CODE 354.1450(c)(3) ........................................................14
1 TEX. ADMIN CODE 354.1450(c)(4). ........................................................14
1 TEX. ADMIN CODE 354.1450(c)(7) ........................................................14
1 TEX. ADMIN CODE 354.1450(c) (8) ........................................................14
1 TEX. ADMIN CODE 354.1450(c)(8)(C) ....................................................14
1 TEX. ADMIN CODE 354.1450(c)(9) ........................................................14
1 TEX. ADMIN CODE 354.1450(c)(10) ......................................................14
1 TEX. ADMIN CODE 354.1450(c)(11) ......................................................14
1 TEX. ADMIN CODE 354.1450(c)(13) ......................................................14

TEX. GOV'T CODE § 2001.038 ................................................................ 10
TEX. GOV'T CODE § 2105.302................................................................ 18

TEX. HUM. RES. CODE § 32.034 ................................................................ 18
TEX. HUM. RES. CODE § 32.070 ........................................................ 14, 15, 22
TEX. HUM. RES. CODE § 32.0281(e) ........................................................ 18

**FEDERAL STATUTE**                                                          **PAGES(S)**

42 C.F.R. §495.370 ........................................................................ 13, 18

Appellants' Brief

# STATEMENT OF THE CASE

**_Nature of the Case_:** Appellants sued the Texas Health and Human Services Commission and certain employees (collectively "HHSC") alleging *ultra vires* acts and violations of due process by the employees, and challenging rules under which the HHSC had brought an administrative action against Appellants. CR198.

**_Trial Court_:** The Honorable Karin Crump, Judge of the 250th District Court, Travis County, Texas.

**_Trial Court Disposition_:** On June 15, 2017, the trial court dismissed for want of jurisdiction all claims from the Appellants Dentistry of Brownsville PC, KS2 TX, PC and Summit Dental Center LP. CR390. In the same order, the trial court granted a Motion for Summary Judgment against all of Appellant Harlingen Family Dentistry's claims. CR390. On August 15, 2017, the trial court filed Findings of Fact and Conclusions of Law regarding its jurisdiction ruling. CR 403.

## RECORD REFERENCES

References to the parties and record are as follows:

"Providers" refers to Appellants collectively.

"Kool Smiles" refers specifically to Appellants Dentistry of Brownsville PC, and KS2 TX, PC.

"Summit" refers specifically to Appellant Summit Dental Center LP.

"Harlingen" refers specifically to Appellant Harlingen Family Dentistry.

"HHSC" refers to Texas Health and Human Services Commission, Charles Smith, Executive Director, Gina Marie Muniz collectively.

"EHR" refers to Electronic Health Records.

References to the clerk's record will be at "CR ____"

References to the reporter's record will be at "RR ____"

## ISSUES PRESENTED

**I.     The trial court misapplied the standard of review for Pleas to the Jurisdiction.**

**II.     The trial court had jurisdiction to hear the Providers' rule challenge.**

**III.     The trial court had jurisdiction to hear the Providers' *ultra vires* claims.**

**IV. The trial court committed reversible error in granting HHSC's Motion for Summary Judgment, which contained no reference to any evidence.**

**V. The trial court's Final Judgment contains error.**

## STATEMENT OF FACTS

In 2009, President Obama signed the American Recovery and Reinvestment Act of 2009, a critical measure to stimulate the economy. Among other provisions, the law provided opportunities for the U.S. Department of Health and Human Services to improve the nation's health care by providing financial incentives to promote the use of electronic health records (EHR). In 2011, Providers were early entrants to the EHR incentive program, whereby federal grant money was made available to the Providers in exchange for the providers transitioning to a certified EHR technology system. Providers worked closely with the HHSC and HHSC's grant administrator (the Texas Medicaid Healthcare Partnership (TMHP)) to assure that their grant applications met the federal eligibility requirements. Those requirements were communicated to Providers by TMHP, the applications were reviewed and approved by TMHP, and the funds were disbursed by TMHP. Over $3 million in grant funds was collectively paid to the Providers as incentive to make their health records EHR compliant.

EHR incentive payments are 100% federal funds, but the HHSC was responsible for applying federal eligibility criteria for those funds and assuring that the eligibility criteria was consistent with federal standards. Those funds were awarded by HHSC on an individual basis to any "Eligible

Provider" that met HHSC's pre-set criteria. Because the funds were paid to individuals, dentists made their application under their individual name even though any EHR system in a multi-location/ multi-dentist practice would, as a practical matter, would be used by all of the dentists and all of the locations. (RR 29:17-21). Naturally, multi-location and multi-dentist practices such as Providers communicated with HHSC (through its agent TMHP) to explore how their large practices could meet the eligibility criteria in a way that permitted the practice to expose all of their dentists to the technology initiative in one group. CR 268.

On some occasions, TMHP selected dentists to be "manually reviewed." RR 31:3-23; CR 268. This was a process by which a grant submission was reviewed, prior to being paid the incentive funds, to assure that all requirements for receiving the grant funds had been met. *Id.* In every case where a Providers' dentist was subject to pre-payment review, TMHP approved the attesting dentists' evidence as being sufficient to meet the federal standards. CR 269. In every case, those dentists were subsequently paid EHR grant funds. *Id.*

By early and mid-2012, Providers ultimately received millions of dollars in grant money to adopt, implement, or upgrade to certified EHR software system. In 2012, HHSC retained an auditor to assure the grant

money was properly spent by providers.  When the Providers were audited in 2013, however, the auditor retroactively applied a different qualification standard than what TMHP had permitted for group practices. CR 269. HHSC did not tell the auditors about TMHP's instructions to the Providers, and did not disclose that the Providers' dentists had actually passed a pre-payment audit that had specifically addressed the qualification standards. Using the different standard, the auditor disqualified all of the Providers' dentists' applications, even the dentists that had passed the pre-payment audit. CR 294.

HHSC then passed Rule 356.202, which bypassed the standard contested case hearing that providers usually received. CR 129.  Instead, the rule made EHR grant disputes subject to an audit process that the agency used for "cost-reporting" providers such as pharmacies, outpatient rehabilitation facilities (ORFs), and comprehensive outpatient rehabilitation facilities (CORFs). CR 130.

In 2014 and 2015, HHSC staff issued letters indicating the Providers' dentists at certain group practices—even the ones that had specifically been audited to assure compliance with the qualification standards—had not actually qualified for the EHR grant funds because of the manner in which TMHP had told the large group providers to apply.  The auditors' reports

recommended the repayment of millions of dollars. Providers appealed. CR 304.

HHSC responded by indicating that any EHR dispute about whether the provider correctly applied for the grant funds would be subject to the process in Rule 356.202, which involved review by an HHSC-selected panel, and a final decision by HHSC staff. CR 290. Kool Smiles' appeal was the first appeal taken. Kool Smiles requested the opportunity to: 1) present its case in person to the panel members, 2) provide evidence in support of its argument, and 3) to hear the HHSC's presentation to the panel members. Kool Smiles' requests were all denied; it was permitted to submit a short memorandum (but no additional evidence) stating its position. HHSC did not reveal who the panel members were, when they were meeting, what they would review, or what HHSC staff would say to them.

Upon information and belief, HHSC withheld information from the Ad Hoc Panel members, much like HHSC had withheld information from the auditors. In September 2016, HHSC e-mailed Kool Smiles a letter signed by Defendant Annick Barton, an employee at HHSC. CR 288. That letter indicated that the Ad Hoc Panel had met in July 2016 and recommended upholding the audit results. *Id.* That letter also indicated that HHSC "concurs with the recommendations of the panel." *Id.* The letter stated that

HHSC would begin recouping nearly $1 million from Kool Smiles. *Id.* The HHSC letter is not signed by the HHSC Executive Director, and does not meet any of the procedural or substantive formalities of a final order. CR 289.

Kool Smiles repaid the grant funds under protest and, along with the other Providers, filed this lawsuit challenging the rules granting HHSC the authority to internally dispose of the contested matter, as well as complementary declaratory judgment actions related to staff's *ultra vires* actions in this matter.

After this lawsuit was filed, HHSC took similar steps against Summit, and the result was the same. Summit received notice of disposition on February 21, 2017 signed by Defendant Gina Muniz, an employee at HHSC. CR 286. The letter stated that HHSC would recoup $807,500 from Summit.

Harlingen employed the same group practice submission used by Kool Smiles and Summit, and appears to be awaiting a similar fate.

In the trial court, HHSC filed a combination "plea to the jurisdiction and motion for summary judgment," asserting multiple alternatives for summary disposition. CR 20. The trial court granted the Providers' objections to HHSC's summary judgment evidence, but allowed HHSC to cure its defects. CR 276, 281. Providers objected to HHSC's subsequent supplementation. CR 368. The objections were overruled in part. CR 390.

Despite the fact that the Providers all made the same claims against HHSC, the trial court granted HHSC's plea to the jurisdiction against Kool Smiles and Summit, and granted HHSC's motion for summary judgment against Harlingen. CR 392.

## SUMMARY OF ARGUMENT

The trial court applied the wrong legal standard for jurisdictional pleas, because HHSC convinced the trial court that the Providers had to prove the factual assertions in their complaint as a matter of law in order to overcome HHSC's jurisdictional plea. For example, the trial court found that Kool Smiles and Summit had not demonstrated a waiver of sovereign immunity to support a rule challenge. But a rule challenge is its own waiver of immunity, so prevailing on a jurisdictional plea required HHSC to present competent evidence to defeat those Providers' jurisdictional assertions as a matter of law. Likewise, sovereign immunity cannot bar those Providers' *ultra vires* claims, because *ultra vires* claims are, by their very nature, complaints regarding illegal or unauthorized action. This brief provides a concise recital of Kool Smiles' and Summit's rule challenges and *ultra vires* claims, and explains why HHSC argument and evidence on each challenge/claim could not have defeated as a matter of law the Providers' factual assertions supporting jurisdiction.

With regard to the last Provider, Harlingen Family Dentistry, the trial court's grant of HHSC's two-page motion for summary judgment was reversible error because the motion contained no reference to any evidence.

Finally, the trial court judgment contains straightforward errors regarding the disposition of the Providers claims. These errors require addressing by this court.

## I. The trial court misapplied the standard of review for Pleas to the Jurisdiction.

Whether a trial court has subject matter jurisdiction is a question of law that the appellate courts review *de novo. Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a plea to the jurisdiction challenges the pleadings, the courts look to the pleader's intent, construes the pleadings liberally in favor of jurisdiction, and accepts the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the cause. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009); *Miranda*, 133 S.W.3d at 226. When the plea challenges the jurisdictional facts, the trial court may consider any evidence the parties have submitted and must do so when necessary to resolve the jurisdictional inquiry. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

If the evidence creates a fact issue as to jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder at trial. *Miranda*, 133 S.W.3d at 227–28; *University of Tex. v. Poindexter*, 306 S.W.3d 798, 807 (Tex. App.–Austin 2009, no pet.). If the evidence is undisputed or fails to raise a fact issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at

228; *Poindexter*, 306 S.W.3d at 807. The appellate courts then review the trial court's determination *de novo*, indulging every reasonable inference on the facts and resolving any doubts in the plaintiff's favor. *Miranda*, 133 S.W.3d at 228; *Poindexter*, 306 S.W.3d at 807.

Under the legal rules recited above, the trial court could only have granted HHSC's jurisdictional plea if the trial court found that the HHSC's summary judgment evidence refuted all of the Providers' claims as a matter of law. That is not what occurred in this case. The trial court improperly shifted the burden to the Providers, forcing the Providers to prove their jurisdictional facts as a matter of law. HHSC did not present evidence that was competent to defeat Provider's jurisdictional assertions as a matter of law.

## II. The trial court had jurisdiction to hear the Providers' rule challenge.

The trial court's found that Kool Smiles and Summit "failed *to demonstrate* a waiver of sovereign immunity to challenge a *final agency decision* under TEX. GOV'T CODE § 2001.038." CR 405. This finding is a bit confusing, since section 2001.038 relates to rule challenges, not final agency

decisions. For this brief, the Providers assume that the court accidentally used the term "final agency decision" when it meant "rule."[1]

As a preliminary matter, HHSC's plea argued that the trial "court has power to determine only the 'applicability of a rule' whose 'application is threatened,' not to issue a declaration regarding the impact of a rule on a particular, already complete agency proceeding." CR 41 (HHSC's jurisdictional plea). Thus, HHSC claimed, Kool Smiles' and Summit's rule challenge was a collateral attack on a final agency decision. *Id.* It was not; Kool Smiles and Summit's rule challenge was just that—a rule challenge, although their other *ultra vires* claims addressed HHSC's actions regarding the alleged "final agency decision." Nevertheless, a liberal reading of HHSC's jurisdictional plea implies a possible mootness argument regarding Kool Smiles' and Summit's rule challenge. (CR 41). However, both Kool Smiles and Summit remain in the EHR grant program and continue to be subject to the rules for other dentists that have received EHR grants, as well as future EHR grants. (RR Vol2, Page 88-91). Thus, the challenged rules continue to apply to Kool Smiles and Summit today, and will be applied with regard to future EHR grants they receive. As a separate basis for avoiding any mootness argument, the rule challenge also remains a justiciable controversy

---

[1] If the HHSC believes there is a more likely explanation for the trial court's finding, that explanation will be addressed in the Provider's response brief.

because the Providers' *ultra vires* claims are intertwined with this rule challenge. For example, if this court finds that the notice letters from HHSC employees were issued without authority, or are not a final agency action, then the Providers remain subject to the challenged rules.

"The APA declaratory-judgment vehicle of section 2001.038 is a legislative grant of subject-matter jurisdiction." *Combs v. Entertainment Publications, Inc.*, 292 S.W.3d 712, 720 (Tex.App.—Austin 2009) The Providers challenged the validity and applicability of HHSC rules at 1 TEX. ADMIN CODE § 356.202 and 1 TEX. ADMIN CODE § 354.1450. CR 13 (Original Petition); CR 211-214 (Second Amended Petition). The Providers claimed that the rules are invalid/inapplicable for seven reasons (outlined below). In general, the Providers argued that the rules should not apply to them at all because they were promulgated under a statute that was inapplicable to the EHR program, and that in any event the rules deprived them of a contested case hearing and/or appeal rights and/or judicial review of what HHSC claimed was a final agency decision. CR 213.

The trial court found that Kool Smiles and Summit had not demonstrated a waiver of sovereign immunity to support a § 2001.038 cause of action. CR 405. This finding of fact turns the evidentiary standard on its head. It was not the Providers' duty to prove that its jurisdictional facts were

true as a matter of law. In order for its jurisdictional plea to prevail, HHSC had to present competent evidence to defeat the Providers' jurisdictional assertions as a matter of law.

The only evidence that was provided to the trial court was the evidence HHSC submitted as part of its summary judgment motion. Therefore, this court should review HHSC's summary judgment evidence to determine whether the evidence is competent to overcome each of the Providers' rule challenges as a matter of law. The Providers' seven rule challenges are set out below:

**1) Rules 356.202 and 354.1450 do not provide process "consistent with the State's Administrative Procedure laws" and "any additional appeal rights that would otherwise be available under procedures established by the State," thus violating federal regulations at 42 C.F.R. §495.370. (CR 209, 212).**

The Providers argued that 42 C.F.R. §495.370 expressly requires that HHSC give the Provider "an opportunity to challenge the State's determination... by submitting documents or data or both to support the provider's claim" and <u>additional appeal rights</u> beyond that. CR 168, 209, 255. HHSC's original plea and supplemental plea deliver only rhetoric regarding why those mandates in the federal regulation should not require the HHSC to provide a contested case hearing. CR 33-34. HHSC provides

no evidence in support of its contention, and certainly no evidence that would overcome the Providers' rule challenge as a matter of law.

**2) The rules were promulgated pursuant to a statute—Human Resources Code section 32.070—that does not, and cannot, apply to the EHR grant program. (CR 211-212).**

The Providers repeatedly make this point: the terms of section 32.070 do not, and cannot, apply to disposing of EHR incentive fund disputes. The statute simply was not written to apply to these sorts of matters, and HHSC's stubborn insistence that the section (and rule 354.1450 promulgated pursuant to the section) must apply to these disputes is worse than ill-fitting clothes—it is impossible. CR 201, 211. Rule 354.1450, which was created in 2006 (over five years before EHR incentive funds were even available) speaks to "field audits"[2] (which would be applicable to CORFs/ORFs), an "entrance interview"[3] and "exit interview"[4] (again, for CORFs/ORFs), "questioned costs"[5] (which may be applicable to pharmacies as well as CORFs/ORFs), and the need for the audit report to address any "proposed adjustment to the provider's cost report."[6] None of that makes any sense in the context of the EHR grant fund program, and HHSC did not comply with those regulatory mandates (because there is no such thing as a field audit,

---

[2] 1 Tex. Admin Code 354.1450(c)(1), (3), (4), (7), (10), (11), and (13).
[3] 1 Tex. Admin Code 354.1450(c)(4).
[4] 1 Tex. Admin Code 354.1450(c)(7), (8).
[5] 1 Tex. Admin Code 354.1450(c)(8)(C).
[6] 1 Tex. Admin Code 354.1450(c)(9).

Appellants' Brief

entrance/exit interview, questioned cost or cost report in the context of an EHR grant). HHSC's plea and supplemental plea does not even rhetorically respond to Providers' challenge on this point. Without no evidence or argument from HHSC, it was error for the trial court to find that HHSC had overcome the Providers' rule challenge as a matter of law.

**3) The rules impose a restriction on appeals (that is, no appeal to the State Office of Administrative Hearings and no judicial review) that is not expressly or impliedly found in Human Resources Code section 32.070, and therefore the rules imposed new limitations inconsistent with the statute, in the event that section does apply to EHR grants. (CR 213).**

The Providers argue that the Rule 356.202(b) appears to forestall any subsequent appeal of the agency's final decision, but there is no such limitation in section 32.070. Thus, the Rule 356.202(b) and 354.1450(c)(13) go beyond what is expressed in the statute that provided the authority for those rules. HHSC's plea and supplemental plea provide no evidence in response to this basis for striking the rule.

**4) The rules were promulgated in excess of the agency's authority. (CR 213).**

The Providers' broad allegations regarding HHSC's rulemaking authority, such as the authority to limit EHR evidence that can be presented in defense of an agency finding, the authority to deny Providers a contested case hearing, and the authority to completely prevent judicial review of staff's

opinion regarding EHR disputes, was properly pled. CR 213. HHSC's plea and supplemental plea do not address HHSC's authority for imposing these limitations, and therefore HHSC could not defeat this rule challenge as a matter of law.

## 5) The rules do not provide minimal and adequate due process protections. (CR 214).

Here, the providers rely on the "star-chamber" qualities that HHSC built into the review process: 1) no ability to for the Providers to present their case in person to anyone, 2) no ability to provide evidence in support of its argument, and 3) no ability to hear the HHSC's presentation to anyone. CR 206. HHSC plea argues that the Providers received a desk review by an HHSC employee of HHSC's preliminary decision and later could "brief the [Ad Hoc] panel." CR 32. At best, the parties' positions create a disputed issue of fact regarding whether the rules provide minimal and adequate due process protection.

## 6) The rules circumvent the due process protections in the Administrative Procedure Act, which would normally apply to this contested matter. (CR 211).

The Providers argue that the standard set out in *Texas Dept. of Prot. & Reg. Ser. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 199 (Tex. 2004) applies to allow judicial review of a final agency action. The challenged rules prohibit such a hearing, so they are subject to challenge. HHSC's plea and

supplemental plea do not respond in any way to this basis for striking the rules.

**7) The rules do not permit the agency to institute a vendor hold to recoup EHR funds, unless the Providers get a contested case hearing. (CR 214).**

The Providers argue that the only HHSC rules permitting the agency to engage in self-help recoupments (such as what the agency did to Kool Smiles and Summit in this case) are the rules found in 1 Tex. Admin Code ch. 357. However, chapter 357 rules relate to action following a contested case hearing, which HHSC denied in this case. HHSC's plea and supplemental plea do not respond in any way to this basis for striking the rule.

**Conclusion regarding the Providers' rule challenges.**

HHSC's plea and supplemental plea offered no reasonable rebuttal to the allegations underlying the Providers' rule challenges. Under these circumstances, it was error for the trial court to jurisdictionally dismiss Kool Smiles' and Summit's rule challenges, because HHSC did not present evidence that was competent to defeat Provider's jurisdictional assertions as a matter of law.

**III. The trial court had jurisdiction to hear the Providers' *ultra vires* claims.**

Courts have consistently recognized that immunity does not bar claims alleging that government officers acted *ultra vires*, or without legal

authority, in carrying out their duties. *Houston Belt & Terminal Railway Co. v. City of Houston*, 487 S.W.3d 154, 157–58 (Tex. 2016). To fall within the *ultra vires* exception to immunity, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

In defending itself from the Providers' *ultra vires* claims, HHSC convinced the trial court to shift onto the Providers the burden of proving as a matter of law the factual assertions in their complaint in order to survive the HHSC's jurisdictional attack. Here, the Providers pled these *ultra vires* acts, and the jurisdictional facts to support them:

**1) Human Resources Code sections 32.0281(e) and/or 32.034, and/or Government Code section 2105.302, and/or overriding federal regulations at 42 C.F.R. §495.370 apply to the EHR grant program, and all require a contested case hearing. CR 201, 210.**

Failing or refusing to apply the proper statutory scheme to any particular situation is an *ultra vires* act. Providers asserted that there are a variety of alternative HHSC statutes and at least one federal mandate that require all participants in the EHR program to receive an opportunity for a contested case hearing; all of those statutes are more fitting to the EHR incentive program than section 32.070. HHSC responded to these

allegations with arguments from its legal counsel; it provided no evidence to dispute the Providers' arguments. CR 35, 37, 38. Without evidence, HHSC could not defeat the Providers' jurisdictional assertions as a matter of law.

**2) The HHSC letters signed by HHSC staff were not final agency decisions, so taking agency action based on a staffer's letter is an *ultra vires* act. CR 208, 255, 258-261.**

Providers' claims on this point were clearly stated in the Second Amended Petition: an HHSC staff letter is not a final agency decision under Texas Government Code section 2001.141. CR 208. Only the HHSC Commissioner is statutorily authorized to render final agency decisions,[7] and the Commissioner did not issue a decision in Kool Smiles' or Summit's EHR disputes, HHSC's million-dollar recoupments against Kool Smiles and Summit were *ultra vires* acts. CR 215.

HHSC responded by arguing that the Commissioner had, in fact, delegated authority to make final agency decisions regarding EHR matters to an HHSC staffer. CR 222, referencing an "action memo" that purportedly delegated such authority. In turn, the Providers pointed to *6th & Neches, L.L.C. v. Aldridge,* 992 S.W.2d 684, 688 (Tex. App.—Austin 1999, pet. denied), which examined how delegation of such power was required to occur. The Providers noted that the HHSC's "action memo" does not mention

---

[7] See Tex. Gov't Code § 531.005, 531.00562.

or deliver the authority for anyone to act on the Commissioner's behalf. CR 258-261. At best, the parties' positions create a disputed issue of fact regarding whether the agency's actions were a reflection of the Commissioner's, as opposed to his employees', authority.

**3) The "action memo" was a statement by the HHSC Commissioner that set out the ministerial procedure for EHR disputes. HHSC did not follow those procedures when it adjudicated Kool Smiles' and Summit's EHR dispute. That was *ultra vires*. CR 215, 261-262.**

The Providers provided allegations and evidence in the form of the "action memo" to support the claim that HHSC staff acted *ultra vires* when staff prevented the Providers from providing supporting documentation and case files to the Ad Hoc Panel. CR 216, 262. The "action memo" expressly contemplates that the Ad Hoc Panel would review such evidence from the HHSC and the provider as part of its deliberations. *See* CR 360 (action memo). HHSC responded by arguing an alternative reading of the memo. CR 223. In any event, the parties' arguments create a disputed fact for the trial court to consider at a merits hearing, and did not defeat the Providers' jurisdictional assertions as a matter of law.

**4) It was an *ultra vires* act for the HHSC staff to not inform auditors and Ad Hoc members that the Providers had been passed a pre-payment audit. CR 216, 263-264.**
**5) It was an *ultra vires* act for the HHSC to present a qualification standard to the auditors and Ad Hoc Panel members that was different than what its agent TMHP had required years earlier. CR 216, 263-264.**

These two related claims are discussed together because they collectively demonstrate that HHSC disqualified the Providers' grant applications by retroactively applying a new qualification standard. It is undisputed that TMHP's pre-payment manual review results concerned whether the Providers had properly applied for and qualified for EHR incentive funds. When those same providers were post-payment audited for the exact same thing, HHSC's refusal to provide such information to either the auditors or the Ad Hoc Panel members was an *ultra vires* act, because it operated to intentionally mislead and misinform the auditors and the Panel members as to the applicable qualification standard. The Providers' evidence on these claims was highlighted in the affidavit of April Lowry. CR 267-270. HHSC responded with no evidence to dispute either claim. CR 224-226. Instead, HHSC's argument was the metaphorical equivalent of a shoulder shrug, as HHSC simply responded that such acts were not categorically *ultra vires*. CR 226.

**6) HHSC staff's "star chamber" review process was an *ultra vires* violation of the Providers' due process rights. CR 216**

The Providers alleged that HHSC staff acts as the legislature, the investigator, the prosecutor, the judge, and the jury. The HHSC review process was its own feedback loop, delivering weighted results at every turn that cannot be effectively monitored for objectivity, or meaningfully challenged by the Providers. CR 216, citing *Rogers v. Texas Optometry Bd.*, 609 S.W.2d 248 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.). HHSC's response was a merits argument, not an attack on the jurisdictional facts. (CR 32-33). As such, HHSC was not entitled to a jurisdictional victory.

**7) It was *ultra vires* for HHSC and its employees to apply the audit procedure set out in Human Resources Code section 32.070 (and the concomitant rules 356.202 and 356.1450 adopted under that statute) to the EHR program. CR 212.**

As explained in the related rule challenge above, section 32.070 does not apply to EHR grant funds. It applies only to businesses that operate pursuant to "cost reports," such as pharmacies, outpatient rehabilitation facilities (ORFs), and comprehensive outpatient rehabilitation facilities (CORFs). *See* 32.070(c)(8). HHSC is not entitled to push any provider

through section 32.070's audit process for administrative convenience, or to avoid a contested case hearing. CR 264. HHSC's plea and supplemental plea does not explain how or why this statutory section is a better fit than the other portions of chapter 32. But even if it did, those would have been merits arguments. Thus, it was error for the trial court to find that HHSC had overcome this *ultra vires* claim as a matter of law. CR 226.

**Conclusion regarding ultra vires and due process allegations.**

The trial court's Findings of Fact No. 1 and 2 state that Kool Smiles and Summit "failed to show that Defendants acted wholly without authority" and "failed to show that they were denied due process and failed to establish an inherent right to judicial review under Article I, sections 13 and 19 of the Texas Constitution." CR 404. That finding indicates that the trial court improperly shifted the burden to the Providers, and forced the Providers to prove their jurisdictional facts as a matter of law. The trial court's burden-shifting was error requiring reversal.

## IV. The trial court committed reversible error in granting HHSC's Motion for Summary Judgment, which contained no reference to any evidence.

The trial court erred in overruling the Providers' objections to HHSC's amended summary judgment evidence. CR 390. The ruling allowed the entirety of HHSC's summary judgment evidence to be considered by the trial

court, so it obviously resulted in an improper judgment on the HHSC's motion for summary judgment and supplementary motion for summary judgment, as well as HHSC's plea to the jurisdiction.

HHSC's amended summary judgment evidence (CR 281) consists of a two-page pleading and eighty-five pages of exhibits, for a total of 87 pages. The pleading purports to authenticate documents attached to HHSC's earlier filed First Amended Plea to the Jurisdiction and Motion for Summary Judgment. There is no such document in the clerk's record. However, the arguments below assume HHSC's motion at CR 20 to be the pleading referenced in HHSC's amended summary judgment evidence.

HHSC's referenced summary judgment motion begins at CR 41, and ends at CR 45. Other than HHSC's recitation of the standard of review for summary judgment, the entirety of the summary judgment argument spans less than two pages. See CR 43-45. The pleading does not cite to or reference any of the exhibits in the summary judgment evidence list. *Id.*

Providers assert that HHSC's failure to reference or cite to any of its amended summary judgment evidence in its actual motion for summary judgment bars the trial court's granting of HHSC summary judgment. "[W]hen presenting summary judgment proof, a party must specifically identify the supporting proof on file that it seeks to have considered by the

trial court." *Gonzales v. Shing Wai Brass and Metal Wares Factory, Ltd.,* 190 S.W.3d 742, 746 (Tex.App.—San Antonio 2005, no pet.), citing *Boeker v. Syptak,* 916 S.W.2d 59, 61 (Tex.App.—Houston[1st Dist.] 1996, no writ). A voluminous record that does not direct the trial court and the parties to the evidence on which the movant relies is insufficient to support summary judgment. *See, e.g., Rogers v. Ricane Enterprises*, 772 S.W.2d 76, 81 (Tex. 1989); *E.B. Smith Co. v. U.S. Fid. & Guar. Co.*, 850 S.W.2d 621, 623-24. Granting summary judgment when the HHSC's motion lack such specificity was reversible error, because Providers are prevented from analyzing and evaluating for this court whether such evidence was disputed with regard to each element of the Providers' claims.

## V. The trial court's Final Judgment contains error.

The trial court granted HHSC's jurisdictional plea against Kool Smiles and Summit, but then dismissed their claims "with prejudice." CR 392. If a court does not have jurisdiction over the subject matter of a lawsuit, the court must dismiss the case for lack of jurisdiction. *Black v. Jackson*, 82 S.W.3d 44, 56 (Tex. App.—Tyler 2004, no pet.); *Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex. App.—Houston[14th Dist.], no pet.) The dismissal must be without prejudice because a dismissal "with prejudice" is effectively a final ruling on the merits. *Id.* After a plaintiff has been given a reasonable

opportunity to amend to cure jurisdictional defects and the plaintiff has not pleaded the facts that support a claim for which there is a waiver immunity, then, and only then, may the trial court dismiss with prejudice. *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004).

Here, neither the HHSC nor the trial court identified the allegedly fatal omission in the Providers' pleadings. Providers' claims clearly included *ultra vires* claims, for which no waiver is required because sovereign immunity simply is not a bar. *Heinrich*, at 372. In addition, Providers pled APA section 2001.038 rule challenges, which constitutes a clear waiver of immunity. *Combs*, at 720. This was part of the reason Providers sought findings of fact and conclusions of law—to discern the basis for the ruling and establish how Providers' pleadings had omitted necessary elements to support jurisdiction. The trial court has not indicated the basis for dismissing with prejudice all of Kool Smiles' and Summit's claims.

**PRAYER**

Petitioners pray this court:

1) reverse the trial court's final judgment granting HHSC's jurisdictional plea so that Kool Smiles' and Summit's claims may proceed in this case, and

2) reverse the trial court's final judgment granting HHSC's summary judgment so that Harlingen's claims may proceed in this case, and

3) reverse and remand the trial court's final judgment.

_____
Jason Ray
Bar No. 24000511
RIGGS & RAY, P.C.
506 West 14th Street, Suite A
Austin, Texas 78701
Telephone: (512) 457-9806
Facsimile: (512) 457-9866
*jray@r-alaw.com*

**ATTORNEY FOR DENTISTRY OF BROWNSVILLE, PC, KS2 TX, PC, SUMMIT DENTAL CENTER, LP, AND HARLINGEN FAMILY DENTISTRY, APPELLANTS.**

## CERTIFICATE OF COMPLIANCE

I certify that this Brief complies with TRAP Rule 9.4 and contains

5,409 words in Georgia typeface of 14-point.

_____
Jason Ray

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Petition for Review was served via e-service on the 13th day of December, 2017 on the following:

KARA HOLSINGER                                    Via E-Service
Assistant Attorney General
State Bar No. 24065444
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____
Jason Ray

# In the Third Court of Appeals,
# Austin Texas

DENTISTRY OF BROWNSVILLE, PC, KS2 TX, PC, SUMMIT DENTAL CENTER, LP
AND HARLINGEN FAMILY DENTISTRY
*Appellants,*
V.

TEXAS HEALTH AND HUMAN SERVICES COMMISSION, CHARLES SMITH,
EXECUTIVE DIRECTOR, AND ANNICK BARTON
*Appellees.*

On appeal from the 250th Judicial District Court, Travis County,
Texas, Trial Court No. D-1-GN-16-005358
The Honorable Karin Crump, Presiding

# APPELLANTS' APPENDIX

1. June 15, 2017 Final Judgment
2. August 15, 2017 Findings of Fact and Conclusions of Law

CAUSE NO. D-1-GN-16-005358

| | | |
|---|---|---|
| DENTISTRY OF BROWNSVILLE, PC, | § | IN THE DISTRICT COURT OF |
| KS2 TX, PC, SUMMIT DENTAL | § | |
| CENTER, LP AND HARLINGEN | § | |
| FAMILY DENTISTRY | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| TEXAS HEALTH AND HUMAN | § | TRAVIS COUNTY, TEXAS |
| SERVICES COMMISSION, | § | |
| CHARLES SMITH, EXECUTIVE | § | |
| COMMISSIONER, AND GINA MARIE | § | |
| MUÑIZ | § | |
| *Defendants.* | § | 250TH JUDICIAL DISTRICT |

## FINAL JUDGMENT

On May 24, 2017, the Court considered Defendants' First Amended Plea to the Jurisdiction, the Supplemental Plea to the Jurisdiction, and Motion for Summary Judgment (collectively the "Motion"). After reviewing the Motion, the Response and Reply thereto, the pleadings on file, the admissible evidence, the arguments of counsel, and the applicable law, the Court is of the opinion that Defendants' Motion should be and is hereby GRANTED as follows:

IT IS ORDERED that Defendants' First Amended Plea to the Jurisdiction and Supplemental Plea to the Jurisdiction are GRANTED as to all claims by Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP against Defendants.

IT IS THEREFORE ORDERED that all claims of Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP are DISMISSED with prejudice for want of subject matter jurisdiction.



005251644



ENTERED
BWH

1

## APPENDIX 1

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is GRANTED as to all claims by Plaintiff Harlingen Family Dentistry. IT IS THEREFORE ORDERED that all claims by Plaintiff Harlingen Family Dentistry's claims are DISMISSED with prejudice.

This Final Judgment disposes of all claims and all parties and is final and appealable.

SIGNED this 15th day of June, 2017.

_____
JUDGE PRESIDING
KARIN CRUMP

2

# APPENDIX 1

CAUSE NO. D-1-GN-16-005358

| | | |
|---|---|---|
| DENTISTRY OF BROWNSVILLE, PC, | § | IN THE DISTRICT COURT OF |
| KS2 TX, PC, SUMMIT DENTAL | § | |
| CENTER, LP AND HARLINGEN | § | |
| FAMILY DENTISTRY | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS HEALTH AND HUMAN | § | TRAVIS COUNTY, TEXAS |
| SERVICES COMMISSION, | § | |
| CHARLES SMITH, EXECUTIVE | § | |
| COMMISSIONER, AND GINA MARIE | § | |
| MUÑIZ | § | |
| *Defendants.* | § | 250TH JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On May 24, 2017, the Court held a non-evidentiary hearing on Defendants' First Amended Plea to the Jurisdiction, the Supplemental Plea to the Jurisdiction, and Motion for Summary Judgment in the above entitled and numbered cause. Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, Summit Dental Center, LP and Harlingen Family Dentistry (collectively "Plaintiffs") and Defendants appeared through their attorneys of record and announced ready. The record of testimony was duly reported by Jamie Foley, the court reporter for the 250th Judicial District Court.

On June 15, 2017, the Court signed a Final Judgment in favor of Defendants and disposed of all of Plaintiffs' claims. On June 29, 2017, pursuant to Tex. R. Civ. P. 296, Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP filed a Request for Findings of Fact and Conclusions of Law regarding the Court's rulings on Defendants' First Amended Plea to the Jurisdiction and the Supplemental Plea to the Jurisdiction. Pursuant to Tex. R. Civ. P. 297, the Court issues the following findings of fact and conclusions of law:





APPENDIX 2

*Ultra Vires Claims*

Finding of Fact No. 1:  Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP failed to show that Defendants acted wholly without authority.

Conclusion of law No. 1: Defendants were not obligated to provide Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP with a contested case hearing under the Administrative Procedure Act, Texas Government Code Ch. 2001, before issuing a final decision to recoup incentive payments under the federal Electronic Health Record Incentive Program.

Conclusion of Law No. 2: The Court lacks subject-matter jurisdiction over the ultra vires claims of Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP.

*Due Process Claims*

Finding of Fact No. 2:  Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP failed to show that they were denied due process and failed to establish an inherent right to judicial review under Article I, sections 13 and 19 of the Texas Constitution.

Conclusion of Law No. 3:  The Court lacks subject-matter jurisdiction over the due process claims of Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP.

*Declaratory Judgment Claim*

Finding of Fact No. 3: Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP failed to plead a waiver of sovereign immunity for their claim that Defendants are not permitted to use a "vendor hold."

Conclusion of Law No. 4:  The Court lacks subject-matter jurisdiction over the claim by Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP that Defendants are not permitted to use a "vendor hold."

Findings of Fact and Conclusions of Law

APPENDIX 2

*Tex. Gov't Code § 2001.038 Claims*

Finding of Fact No. 4:  Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP failed to demonstrate a waiver of sovereign immunity to challenge a final agency decision under Tex. Gov't Code § 2001.038.

Conclusion of Law No. 5: The Court lacks subject-matter jurisdiction over the claim of Plaintiffs Dentistry of Brownsville, PC, KS2 TX, PC, and Summit Dental Center, LP under Tex. Gov't Code § 2001.038.

SIGNED this __15TH__ day of August 2017.

JUDGE PRESIDING
KARIN CRUMP

Findings of Fact and Conclusions of Law

APPENDIX 2